# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DARREN RAY TOWNSEND,

    Petitioner,

vs.

COX, et al.,

    Respondents.

Case No. 2:04-CV-01567-PMP-(PAL)

**ORDER**

        Before the Court are Darren Ray Townsend's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (#4), Respondents' Answer (#17), and Townsend's Reply (#30). The Court finds that Townsend is not entitled to relief and denies the Petition.

        The state charged Townsend with two counts of possession of stolen property and one count of carrying a concealed weapon; the state also sought an adjudication of Townsend as a habitual criminal. The jury found him guilty on all counts. The trial court adjudged Townsend to be a habitual criminal pursuant to Nev. Rev. Stat. § 207.010. The court sentenced Townsend to life imprisonment with the possibility of parole after ten (10) years for each stolen-property count—the long terms resulted from the finding of habitual criminality—and one year in jail for the stolen-property count. The terms run concurrently. Ex. 3 (#17, p. 37).[1] Townsend appealed, and the Nevada Supreme Court affirmed. Ex. 8 (#17, p. 113). Townsend then filed a state habeas corpus petition. The trial court appointed counsel to represent Plaintiff and conducted an evidentiary

---

[1] Page numbers in parentheses refer to the Court's electronic image files.

hearing. Ex. 16 (#17, p. 226). The court then denied the petition. Ex. 16 (#17, p. 217). Townsend then commenced this action. The Court found that Townsend did not exhaust his available state-court remedies for part of Ground 1, and Townsend elected to dismiss it (#26). Also, the Court dismissed part of Ground 3 as procedurally defaulted.

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotations omitted).

> When it comes to state-court factual findings, [the Antiterrorism and Effective Death Penalty Act] has two separate provisions. First, section 2254(d)(2) authorizes federal courts to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable. Second, section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and that this presumption of correctness may be rebutted only by "clear and convincing evidence."
>
> We interpret these provisions sensibly, faithful to their text and consistent with the maxim that we must construe statutory language so as to avoid contradiction or

> redundancy. The first provision—the "unreasonable determination" clause—applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, that the process employed by the state court is defective, or that no finding was made by the state court at all. What the "unreasonable determination" clause teaches us is that, in conducting this kind of intrinsic review of a state court's processes, we must be particularly deferential to our state-court colleagues. For example, in concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record. Similarly, before we can determine that the state-court factfinding process is defective in some material way, or perhaps non-existent, we must more than merely doubt whether the process operated properly. Rather, we must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.

Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004).

"Rule 7 of the Rules Governing § 2254 cases allows the district court to expand the record without holding an evidentiary hearing." Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir. 2005). The requirements of § 2254(e)(2) apply to a Rule 7 expansion of the record, even without an evidentiary hearing. Id. "An exception to this general rule exists if a Petitioner exercised diligence in his efforts to develop the factual basis of his claims in state court proceedings." Id.

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. Davis v. Woodford, 333 F.3d 982, 991 (9th Cir. 2003).

Respondents have divided the Petition's grounds into sub-parts. Where useful, the Court follows the practice.

In Ground 1, Townsend claims that he received ineffective assistance from his retained counsel, Kirk Kennedy. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective

-3-

1  assistance claim to approach the inquiry in the same order or even to address both components of
2  the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

3  Strickland expressly declines to articulate specific guidelines for attorney
4  performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of
5  interest, the duty to advocate the defendant's cause, and the duty to communicate with the client
6  over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's
7  duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney
8  performance. . . . Any such set of rules would interfere with the constitutionally protected
9  independence of counsel and restrict the wide latitude counsel must have in making tactical
10 decisions." Id. at 688-89.

11 Review of an attorney's performance must be "highly deferential," and must adopt
12 counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of
13 hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that
14 counsel's conduct falls within the wide range of reasonable professional assistance; that is, the
15 defendant must overcome the presumption that, under the circumstances, the challenged action
16 'might be considered sound trial strategy.'" Id. (citation omitted).

17 The Sixth Amendment does not guarantee effective counsel per se, but rather a fair
18 proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v.
19 Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell
20 below an objective standard of reasonableness alone is insufficient to warrant a finding of
21 ineffective assistance. The petitioner must also show that the attorney's sub-par performance
22 prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that,
23 but for the attorney's challenged conduct, the result of the proceeding in question would have been
24 different. Id. at 94. "A reasonable probability is a probability sufficient to undermine confidence in
25 the outcome." Id.

26 If a state court applies the principles of Strickland to a claim of ineffective assistance
27 of counsel in a proceeding before that court, the petitioner must show that the state court applied
28

-4-

1  Strickland in an objectively unreasonable manner to gain federal habeas corpus relief. Woodford v.
2  Visciotti, 537 U.S. 19, 25 (2002) (per curiam).
3         First, Townsend claims that Kennedy also represented Teresa Provenzano, who
4  testified against Townsend in exchange for the dismissal of charges against her, but that Kennedy
5  did not disclose this conflict of interest to Townsend. The Nevada Supreme Court accurately
6  summarized the testimony from the evidentiary hearing:

> [A]ttorney Kirk Kennedy testified that he began representing Townsend and his co-defendant, Teresa Provenzano, in March 1998. Kennedy stated that he did not believe a conflict existed in representing both Townsend and Provenzano because his strategy was to negotiate both cases. Kennedy further testified that his representation of Provenzano concluded during the summer of 1998. At that time, Provanzano [sic] retained attorney Carmine Colucci. On September 21, 1998, Provenzano signed an agreement to testify against Townsend in exchange for a dismissal of the charges against her. Both Colucci and Kennedy testified that Kennedy was not involved in negotiations with the State concerning Provenzano's agreement to testify against Townsend. As such, the district court's determination that Kennedy did not actively represent conflicting interests is supported by substantial evidence and is not clearly wrong. Consequently, the district court did not err in denying this claim.

14  Ex. 19, pp. 3-4 (#17, pp. 329-30) (citations omitted). Colucci also represented Provenzano from
15  December 15, 1998, through March 30, 1998. Ex. 16, p. 15 (#17, p. 240). He negotiated the
16  agreement to testify during this first segment of his representation of her. Id., p. 16 (#17, p. 241). In
17  light of this evidence, the Nevada Supreme Court's factual findings were reasonable. 28 U.S.C.
18  § 2254(d)(2). Townsend's argument is that, despite what the evidentiary hearing revealed, Kennedy
19  might have negotiated on Provenzano's behalf. First, he notes that Colucci signed the agreement for
20  Provenzano's testimony on September 30, 1998, after Provenzano had testified. Second, he notes
21  that Kennedy had testified that he had not negotiated a formal written agreement for Provenzano's
22  testimony, thus implying that Kennedy came to a verbal agreement for her testimony. However,
23  without any evidence, Townsend's argument is mere speculation, and he has not rebutted the
24  presumption of correctness. 28 U.S.C. § 2254(e)(1). Additional evidence also belies Townsend's
25  argument. In the middle of the trial, on September 23, 1998, the district court held a hearing to
26  determine the admissibility of Provenzano's testimony at trial. On cross-examination, Kennedy
27  asked Provenzano about her agreement to testify. Provenzano stated that her other attorney had
28  negotiated an agreement while the case was in its preliminary stages in the justice court. Ex. 24, p.

207 (#33-9, p. 12). Provenzano stated that she did not sign it at first because she did not want to testify against Townsend, but she changed her mind right before trial. She called her attorney, he said that he knew what was in the agreement, and told her to sign it even though he was not present at the time. Id., pp. 207-08 (#33-9, pp. 12-13). Provenzano's testimony shows that Kennedy had no involvement with her agreement to testify. Consequently, the Nevada Supreme Court's determination was a reasonable application of Strickland. 28 U.S.C. § 2254(d)(1).

As noted above, Townsend did not exhaust Ground 1(2), and he dismissed it.

In Ground 1(3), Townsend claims that Kennedy was ineffective for failing to argue that it was not "just and proper" to adjudicate Townsend as a habitual criminal. In Ground 1(4), Townsend claims that Kennedy was ineffective for failing to investigate and prepare a defense to the charge of habitual criminality. Respondents note that the Nevada Supreme Court treated the two claims as one:

> Second, Townsend claimed that his trial counsel was ineffective for failing to investigate previous felony convictions used to enhance his sentence, or present evidence concerning the constitutional invalidity of these previous convictions. We conclude that this claim is without merit. Townsend failed to articulate what investigation his trial counsel should have conducted in this area; further, Townsend provided no support whatsoever for his claim that his prior convictions were constitutionally infirm. As such, he failed to demonstrate that his trial counsel was ineffective, and we affirm the order of the district court with respect to this issue.

Ex. 19, p. 4 (#17, p. 330) (citations omitted). Even in his Reply (#30), Townsend does not argue how his prior convictions were infirm and unqualified for the habitual-criminal adjudication. With respect to Ground 1(4), the Nevada Supreme Court's ruling was a reasonable application of Strickland. Ground 1(3) is belied by the record. Kennedy did argue that the court should not adjudge Townsend to be a habitual criminal. Ex. 4, p. 7 (#17, p. 46). Kennedy's problem was that he had little on which to base an argument: Townsend has extensive juvenile and adult criminal records, including an earlier habitual-criminal adjudication, from which he was on parole at the time he was caught in this case. See id., pp. 4-5 (#17, pp. 43-44). To this extent, Ground 1(3) is without merit. Later, Townsend argues that Kennedy should have argued that the trial judge did not make specific findings that it was "just and proper" to adjudge Townsend as a habitual criminal. Reply, p.

8 (#30).² His argument is obsolete because the Nevada Supreme Court has since clarified that a district court need not use those specific words but only need understand that a habitual-criminal adjudication is discretionary, not mandatory. Hughes v. State, 996 P.2d 890 (Nev. 2000). Ground 1(3) is without merit.

In Ground 1(5), Townsend argues that Kennedy failed to retain a psychological expert to determine that it was not just and proper to adjudicate Townsend as a habitual criminal. On this issue, the Nevada Supreme Court held:

> We conclude that this claim is similarly meritless. First, Townsend failed to demonstrate that any psychological expert would have provided such testimony. Further, even assuming the existence of such an expert, Townsend informed the district court prior to sentencing that his actions were the result of a drug addiction. [Ex. 4, pp. 7-9 (#17, pp. 46-48)]. Thus, Townsend did not establish that the results of his sentencing hearing would have been different if his trial counsel had procured testimony from a psychological expert, and the district court did not err in denying the claim.

Ex. 19, pp. 4-5 (#17, pp. 330-31). In other words, the district judge already had all the information before her that a psychologist would have provided, assuming that the psychologist believed Townsend. The Nevada Supreme Court's decision was a reasonable application of Strickland. 28 U.S.C. § 2254(d)(1).

In Ground 2, Townsend raises several issues of ineffective assistance of appellate counsel. In Ground 2(1), Townsend claims that appellate counsel failed to appeal the adjudication of habitual criminality.³ On this issue, the Nevada Supreme Court held:

> Specifically, Townsend argued that the State failed to prove the existence of the prior convictions beyond a reasonable doubt, or prove that Townsend was the person who committed the prior offenses. We conclude that Townsend is not entitled to relief on this claim. First, Townsend did not allege with any particularity how his prior

---

²Townsend raises a similar claim with respect to his appellate counsel in Ground 2(3).

³The Reply (#30) attempted to transform Ground 2 into a claim that Townsend's prior convictions were not presented to the jury. The Court told Townsend that he could not raise a new ground in a reply brief. The Court gave Townsend the opportunity to move for leave to amend his petition, with the warning that the Court would disregard the argument in the Reply if Townsend did not so move. Order (#31). Townsend did not file a motion for leave to amend his petition within the allotted time, and the Court will not consider the argument on Ground 2 in the Reply (#30).

> convictions were constitutionally invalid. Additionally, the district court and Townsend's trial counsel were provided with certified copies of Townsend's previous felony convictions. Prior to the imposition of Townsend's sentence, the prosecutor argued for habitual criminal adjudication and listed Townsend's previous convictions. When asked whether he had anything to state on his behalf, Townsend admitted that he had a prior conviction for attempted coercion, as well as "a lot of thefts." Because Townsend failed to demonstrate that this issue had a reasonable probability of success on appeal, we affirm the order of the district court with respect to this claim."

Ex. 19, pp. 5-6 (#17, pp. 331-32) (citations omitted). Townsend has not shown how this was an unreasonable application of Strickland. 28 U.S.C. § 2254(d)(1).

In Ground 2(2), Townsend claims that appellate counsel should have argued that the state sought to enhance his sentence in retaliation for Townsend's exercise of his rights to self-representation, a speedy trial, and a trial by jury. On this claim, the Nevada Supreme Court held:

> Townsend has a lengthy criminal record and has previously been adjudicated a habitual criminal; he did not provide adequate facts to support a claim that the State sought to enhance his sentence for an improper purpose. Thus, Townsend did not establish that this issue would have likely succeeded on appeal, and the district court did not err in denying the claim.

Ex. 19, p. 6 (#17, p. 332) (citations omitted). Townsend has not shown how this is an unreasonable application of Strickland. 28 U.S.C. § 2254(d)(1).

In Ground 2(3), Townsend claims that appellate counsel failed to argue that the district court failed to specifically find that it was "just and proper" to adjudicate him as a habitual criminal. On this issue, the Nevada Supreme Court held:

> A sentencing court must exercise discretion and weigh the appropriate factors before adjudicating a defendant a habitual criminal pursuant to NRS 207.010. Nevada law does not require, however, that a sentencing court "make 'particularized findings' that it is 'just and proper' to adjudicate a defendant as a habitual criminal." "[A]s long as the record as a whole indicates that the sentencing court was not operating under a misconception of the law regarding the discretionary nature of a habitual criminal adjudication and that the court exercised its discretion, the sentencing court has met its obligation under Nevada law." Here, the record of Townsend's sentencing reveals that the district court heard arguments from counsel and understood the discretionary nature of habitual criminal adjudication. As such, Townsend failed to demonstrate that an appeal of this issue would have been successful, and the district court did not err in denying this claim.

Ex. 19, p. 7 (#17, p. 333) (quoting Hughes v. State, 996 P.2d 890). The district judge's comments at sentencing show that she did not assume that the habitual criminal statute was a mandatory

sentencing requirement.  <u>See</u> Ex. 4, pp. 9-10 (#17, pp. 48-49).  The Nevada Supreme Court reasonably applied <u>Strickland</u>.  28 U.S.C. § 2254(d)(1).

In Ground 2(4), Townsend claims that his appellate counsel failed to challenge the constitutionality of Nev. Rev. Stat. § 207.016(3), which he argues prevented him from arguing that his prior convictions were constitutionally invalid.  On this issue, the Nevada Supreme Court held:

> With respect to previous convictions used for enhancement purposes, this court has held, "[i]f the record raises a presumption of constitutional infirmity, the state must present evidence to prove by a preponderance that the prior conviction was constitutionally obtained."  Even if the record does not raise a presumption of constitutional infirmity, "the defendant is nonetheless free to present evidence tending to rebut the presumption of regularity afforded to a criminal conviction."  Consequently, Townsend failed to demonstrate that NRS 207.016 prevented him from arguing that his prior convictions were constitutionally invalid, such that an appeal of this issue would have been successful.  We therefore affirm the order of the district court with respect to this claim.

Ex. 19, pp. 7-8 (#17, pp. 333-34) (quoting <u>Dressler v. State</u>, 819 P.2d 1288 (1991)).  Given that § 207.016 did not prevent Townsend from arguing that his prior convictions were invalid, counsel did not need to challenge the constitutionality of § 207.016.  The Nevada Supreme Court reasonably applied <u>Strickland</u>.

Ground 3 is a claim that the Fourteenth Amendment's Due Process Clause was violated.  In Ground 3(1), Townsend claims that an error in a jury instruction allowed the jury to find him guilty based upon ordinary negligence.  The Court has dismissed this claim as procedurally defaulted.  Order #23, p. 3.

The remaining parts of Ground 3 are all based upon the evidence presented at trial, which the Court summarizes here.

Joseph and Jodie Albanese testified that on November 3, 1997, someone had broken into their house.  They lost many items.  Ex. 23, pp. 125, 141-43 (#33-6, pp. 7, 23-25).  Police later called them to a substation, asking them to identify some recovered property.  They found some of their items, including jewelry that had Joseph's father's name on it.  <u>Id.</u>, pp. 126-27, 143 (#33-6, pp. 8-9, 143).

Vonita Fields and Anthony Blalock, siblings, lived in the same house on December 8, 1997.  Blalock testified that he entered his house and found that someone had broken into it.  His

1  computer, peripherals, and other items were missing. Ex. 24, pp. 177-88 (#33-8, pp. 16-27).
2  Blalock actually saw the burglar passing these items over the back fence into an alley. Ex. 24, pp.
3  189-91 (#33-8, pp. 28-30). Fields testified that she lost some items. Ex. 23, pp. 154-55 (#33-7, pp.
4  2-3). They reported the burglary to the police. Later that day, the police asked them to identify
5  some items at the station. They found everything that they had lost, except for a small steam train
6  engine. Ex. 23, p. 155 (#33-7, p. 3); Ex. 24, p. 181 (#33-8, p. 20).

7  Teresa Provenzano testified that on December 8, 1997, she picked up Townsend in
8  her car near the intersection of Jones and Charleston Boulevards in Las Vegas. Ex. 24, p. 222 (#33-
9  9, p. 27). She then drove to an alley, where Townsend retrieved some items and put them into her
10  car. Id., p. 223 (#33-9, p. 28). She then drove to a house at 6020 Morro Bay, Las Vegas. Id., p. 227
11  (#33-9, p. 32). Townsend entered the house first, and she followed after a while. When they left,
12  the police detained them. Id. She consented to the search of her car. Id., pp. 228-29 (#33-9, pp. 33-
13  34).

14  Police officers testified that a tip sent them to 6020 Morro Bay, Las Vegas. Ex. 22,
15  p. 37 (#33-3, p. 13). They knew from personal experience that this house, owned by a man named
16  "Big," was the focus of several investigations, and they knew by reputation that it was a problem
17  house. Id., p. 39 (#33-3, p. 15). Officers observed Townsend and Teresa Provenzano arrive in
18  Provenzano's car and then enter the house separately, Townsend first. Id., pp. 38-40 (#33-3, pp. 14-
19  16). When the two left together, the officers moved to detain them. Townsend tried to flee back to
20  the house. Id., pp. 41-43 (#33-3, pp. 17-19). The officers testified from personal experience that
21  "Big" had refused to open the door for them, let alone admit them. Id., pp. 79-80 (#33-4, pp. 21-
22  22). The police caught Townsend and arrested him for failing to stop on the signal of a police
23  officer. A pat-down search revealed a concealed dagger, and the officers arrested Townsend for
24  that, too. Id., pp. 43-44 (#33-4, pp. 19-20). With Provenzano's consent, officers searched her car.
25  They found the items that Blalock, Fields, and the Albaneses had lost. Some had a return-address
26  label with Fields's name, address, and phone number. Id., pp. 90-92 (#33-4, pp. 32-34). Some
27  jewelry with engraved with the name of Joseph Albanese's father. Id., pp. 107-08 (#33-5, pp. 15-
28

16).  Investigation quickly connected these items with the thefts described above, and officers also arrested Townsend for possession of stolen property.[4]

In Ground 3(2), Townsend claims that the district court erred in admitting evidence about the house where police arrested him, and by not conducting a hearing on the evidence's admissibility.  On this issue, the Nevada Supreme Court held:

> The police officer's testimony about the criminal activities associated with the house was character testimony that tended to suggest that Townsend acted in conformity with the occupants of the house, which is prohibited by NRS 48.045(2).  This testimony was minimal in light of the other evidence presented regarding Townsend's guilt and criminal history.  Neither party focused on this testimony in closing arguments.  In light of the overwhelming evidence of Townsend's guilt, we conclude that any error was harmless.

Ex. 8, p. 3 (#17, p. 115).  An error in state evidence law does not violate the Fourteenth Amendment unless the error is so great that it renders the proceedings fundamentally unfair.  See Estelle v. McGuire, 502 U.S. 62, 70 (1991).  However, McGuire specifically reserved comment on the question whether admission evidence of other illegal acts to prove propensity to commit a crime could violate the constitution.  Id. at 70, 74-75.  See also Alberni v. McDaniel, 458 F.3d 860, 864 (9th Cir. 2006).  The Nevada Supreme Court's decision cannot be contrary to, or an unreasonable application of clearly-established federal law as determined by the Supreme Court of the United States because no such clearly-established federal law exists on this issue.  Alberni, 458 F.3d at 867.  See also 28 U.S.C. § 2254(d)(1).  Ground 3(2) is without merit.

In Ground 3(3), Townsend claims that the trial court erred in admitting evidence of the uncharged burglaries that led to his possession of the stolen property.  On this issue, the Nevada Supreme Court held:

> In this case, both Anthony Blalock's testimony and Joe Albanese's (the burglary victims) testimony were necessary in order to prove that the items recovered from Townsend were stolen.  Moreover, neither witness could testify that the property was stolen without describing the burglary.  Because the State was required to prove that

---

[4]The police were actually looking for another man when they caught Townsend.  Officer William Nellis testified that he received a tip that James Harmon was heading to "Big's" house with stolen goods.  Ex. 22, p. 73 (#33-4, p. 15).  Nellis dispatched other officers who were closer to the house, and then he proceeded to the house himself.  The other officers arrested Townsend.  When Nellis arrived at the scene, he had no idea who Townsend was.  Id., p. 75 (#33-4-p. 17).

-11-

> the property was stolen, the evidence was properly admitted in order to complete the story of the crime. Accordingly, the district court was not required to conduct a Petrocelli [v. State, 692 P.2d 503, 508 (Nev. 1985),] hearing and did not abuse its discretion.

Ex. 8, pp. 3-4 (#17, pp. 115-16) (citations omitted). The prosecution must prove every element of the charged offense, and admission of relevant evidence does not violate the Constitution. McGuire, 502 U.S. at 69-70. The Nevada Supreme Court identified the same principle, and it reasonably applied McGuire. 28 U.S.C. § 2254(d)(1).

In Ground 3(4), Townsend claims that Provenzano gave uncorroborated accomplice testimony. When he raised this issue in the state courts, The Nevada Supreme Court held:

> Theresa Provenzano, the accomplice, testified to the origin of the items found in Townsend's possession, where Townsend met her on the day of the burglary, and what Townsend wore. The burglary victims, Anthony Blalock, Vonita Fields, Joe and Jody Albanese, and Police Officers Sylva and Roberts all testified about the burglar's clothes, what Townsend looked like on the day of the burglary, and the description of the items stolen and those found in Townsend's possession. In light of these witnesses' testimony, we conclude that there is sufficient evidence to support the district court's determination that Provenzano's testimony was corroborated.

Ex. 8, pp. 4-5 (#17, pp. 116-17). This was a reasonable determination in light of the evidence presented at trial, which the Court has summarized above. Far from a lack of corroboration, almost all of Provenzano's testimony was corroborated. The record belies Ground 3(4).

In Ground 3(5), Townsend claims that the evidence was insufficient to support the guilty verdict. "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citing In re Winship, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16. "[I]t is the exclusive province of the jury, to decide what facts are proved by competent evidence. It was also their province to judge of the credibility of the witnesses, and the weight of

their testimony, as tending, in a greater or less degree, to prove the facts relied on." Ewing's Lessee v. Burnet, 36 U.S. (11 Pet.) 41, 50-51 (1837). On this issue, the Nevada Supreme Court held:

> The combination of the eyewitness testimony of the police officers and the accounts of the burglary victims supports the jury's conclusion that the property in Townsend's possession was stolen. Furthermore, the testimony of the officers, the victims and Provenzano support the conclusion that the property was in Townsend's possession. Finally, Provenzano's statements regarding Townsend's actions the day of the burglaries and the victims' description of Townsend's identifying characteristics reasonably support a jury's inference that Townsend knew the property was stolen. In light of this evidence, we conclude that there was sufficient evidence to support the jury's verdict, and we affirm the judgment of conviction.

Ex. 8, pp. 6-7 (#17, pp. 118-19) (citations omitted). This was a reasonable application of Jackson. With respect to the weapons charge, police officers found a dagger tucked inside Townsend's belt and hidden beneath his shirt. A jury could easily infer from that evidence the Townsend carried a concealed weapon. See Nev. Rev. Stat. § 202.350. Ground 3(5) is without merit.

In Ground 4, Townsend claims that his life sentences for possession of stolen property, enhanced because he is a habitual criminal, violate the Eighth Amendment. On this issue the Nevada Supreme Court held:

> In this case, Townsend's adjudication as a habitual criminal and sentence of two concurrent terms of ten years to life for the two counts of possession of stolen property is entirely within the boundaries of NRS 207.010(1). Townsend's criminal history of five prior felony convictions, including two for burglary and one for conspiracy to commit burglary, further support the district court's imposition of the sentence. Our review of other Nevada cases cited by Townsend does not indicate that this sentence is disproportionate to the crime in light of his criminal history. We conclude, therefore, that the district court did not abuse its discretion and we affirm the sentence.

Ex. 8, pp. 5-6 (#17, pp. 117-18) (footnote omitted).

///
///
///
///
///
///
///
///

1 | The Eighth Amendment prohibits grossly disproportionate sentences. <u>Lockyer v.
2 | Andrade</u>, 538 U.S. 63, 71-73 (2003) (citing <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991); <u>Solem v.
3 | Helm</u>, 463 U.S. 277 (1983); <u>Rummel v. Estelle</u>, 445 U.S. 263 (1980)). Nevada has developed the
4 | same principle. <u>Lloyd v. State</u>, 576 P.2d 740, 742 (1978). The Nevada Supreme Court noted that
5 | the sentence was within the allowable range, noted Townsend's criminal history of five prior felony
6 | convictions, compared Townsend's sentence with other cases, and found that the sentence was
7 | proportionate to the crime. This was a reasonable application of clearly-established federal law. 28
8 | U.S.C. § 2254(d)(1).

IT IS THEREFORE ORDERED that the Petition for a Writ of Habeas Corpus (#4) is **DENIED**. The Clerk of the Court shall enter judgment accordingly.

DATED this 19th day of September, 2006.

_____
PHILIP M. PRO
Chief United States District Judge